UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD H. SCHOCKER,

    Plaintiff,

vs.                                                                 Case No: 07-15059
                                                                              Honorable Victoria A. Roberts

GUARDIAN ALARM CO. OF MICH.

    Defendant.

| DAVID A. KOTZIAN, PLLC | GARAN, LUCOW, MILLER, P.C. |
|---|---|
| DAVID A. KOTZIAN P38308 | THOMAS R. PAXTON P36214 |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 31700 Middlebelt Road, Suite 150 | 1000 Woodbridge |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| 248-737-9991 | 313-446-5518 |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      NOW COMES the Defendant, GUARDIAN ALARM CO. OF MICH., by and through its attorneys, GARAN, LUCOW, MILLER, P.C., and pursuant to Federal Rules of Civil Procedure Rule 56, as there is no genuine issue of material fact, defendant is entitled to judgment as a matter of law for reasons more thoroughly set forth in the Defendant's Brief in Support of the Motion for Summary Judgment.

                                                       By:  s/ Thomas R. Paxton
                                                       GARAN LUCOW MILLER, P.C.
                                                       1000 Woodbridge Street
                                                       Detroit, MI 48207-3192
                                                      (313) 446-5518
                                                      Tpaxton@garanlucow.com
Dated:  May 16, 2008                                 P36214

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD H. SCHOCKER,

    Plaintiff,

vs.                                                Case No: 07-15059
                                                Honorable Victoria A. Roberts

GUARDIAN ALARM CO. OF MICH.

    Defendant.

_____

| DAVID A. KOTZIAN, PLLC | GARAN, LUCOW, MILLER, P.C. |
|---|---|
| DAVID A. KOTZIAN P38308 | THOMAS R. PAXTON P36214 |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 31700 Middlebelt Road, Suite 150 | 1000 Woodbridge |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| 248-737-9991 | 313-446-5518 |

_____

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## QUESTIONS PRESENTED

1. Should the employee be able to claim compensation both under Title VII of the Civil Rights of 1964 and under the Michigan Elliot Larsen Civil Rights Act when the clear, undisputed evidence shows that the plaintiff should have never been employed nor could have been employed given his prior felony conviction of breaking and entering and the Michigan Private Security Business and the Security Alarm Act (MCLA 338.1051 et seq) would have prevented his employment in any fashion?

    *The defendant answers:* "Yes"

B.  Did the defendant have legitimate, non-discriminatory reasons for terminating the plaintiff's employment that were not pretextual so as to prevent the finding of liability under either Title VII or the Michigan Elliot Larsen Civil Rights Act?

    *The defendant answers:* "Yes"

2. Is the plaintiff entitled to compensation under the Michigan Sales Representative Commission Act (MCL 600.2961) when he was not engaged in the sale of goods?

    *The defendant answers:* "No"

3. Is the defendant able to pursue a claim of breach of contract and/or promissory estoppel when the continued employment would be a clear violation of the Michigan state statutory law?

    *The defendant answers:* "No"

B.  Is plaintiff is entitled to a claim of promissory estoppel when the promise sought to be enforced is in contravention of state law?

    *The defendant answers:* "No"

## TABLE OF AUTHORITIES

*Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)..........................................................................9

*Barrett vs. Kirkland Community College*, 245 Mich App 306, 315; 628 N.W. 2d 63 (2001) ........12

*Booker vs. Brown & Williamson Tobacco Co*, 879 F2d 1304, 1313 (6th Cir. 1989) .....................12

*Booker vs. City of Detroit*, 251 Mich App 167, 174; 650 NW2d 680 (2002)..................................15

*Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)........................................................................10

*Grow vs. W. A. Thomas Co.*, 236 Mich App 696, 710-11; 601 N.W. 2d 426 (1999)......................11

*Harrison vs. Metropolitan Gov't*, 80 F3d 1107; 1118 (6th Cir. 1996).............................................12

*Hess vs. Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005)........................................14

*Horn vs. Department of Corrections*, 216 Mich App 58, 67; 548 N.W. 2d 660 (1996)..................11

*Klapp vs. United Insurance Group Agency, Inc.*, 259 Mich App 467; 674 NW 2d 736 (2003)......13

*Leland vs. Ford*, 245 Mich 599, 609-610;  223 N.W. 218 (1929)....................................................16

*Marrera vs. McDonnell Douglas Capital Corp*, 200 Mich App 438, 442; 505 NW2d  275 (1993).15

*Matsushita Electric Industries, Ltd vs. Zenith Radio*, 475 U.S. 574, 587 (1986)............................10

*McDonnell Douglas Corp vs. Green*, 411 US 792 (1973)..............................................................13

*McKennon vs. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995).............................10,11

*Mino vs. Clio School District*, 255 Mich App 60, 71; 661 NW2d 586 (2003)............................... .15

*Moore vs. Philip Morris Co.*, 8F3d335, 339-40 (6th Cir. 1993).......................................................10

*Novak v. Nationwide Mutual Ins. Co.*, 235 Mich App 675, 687; 599 NW2d 546 (1999)................16

*Polk vs. Yellow freight systems*, 801 F2d 190, 199 (6th Cir. 1986)..................................................12

*Sniecinski vs. Blue Cross/Blue Shield of Michigan, 469 Mich 124, 133; 666 N.W. 2d 186 (2003)* 13

*Walborn vs. Erie County Care Facility, 150 F3d 584, 589 (6th Cir. 1998)*..................................13

*William's Delight Corp vs. Harris, 87 Mich App 202, 208 273 NW2d 911 (1978)*......................16

*Wright vs. Restaurant Concept Mgmt Inc., 210 Mich App 105; 532 N.W. 2d 889 (1995)*............11

*Ypsilanti Twp v. Gen. Motors Corp., 201 Mich App 128, 134, 139; 506 NW2d 556 (1993)*..........15

***Statutes***

*MCLA 338.1051*.......................................................................................................3,6,7,11,15

*MCLA 600.2961(1)(e)*..........................................................................................................13

*Fed R. Civ.P.56(e)*...............................................................................................................10

## INTRODUCTION

Defendant, Guardian Alarm Co. of Mich., is a private security business which is governed by the Michigan Private Security Business & Security Alarm Act, MCLA 338.1051. Plaintiff has claimed that he was retaliated against when he filed a charge of discrimination with the EEOC in light of his concerns regarding his continued employment. The discovery and evidence that will be presented in this matter clearly demonstrate that the plaintiff was not able to be employed with the defendant due to the strict language of the Michigan statutes. Further, it is clear from the evidence that the plaintiff cannot demonstrate the essential elements of *prima facie* claims of breach of contract, promissory estoppel or violation of Title VII of the Civil Rights Act of 1964 or the Elliot Larsen Civil Rights Act.

## STATEMENT OF FACTS

Plaintiff, Ronald Schocker, was originally hired by defendant Guardian in April of 1987. At the time of his hire, Mr. Schocker completed an employment application. [Employment Application, Exhibit A] This application asked many of the standard pre-employment questions, including: "Have you ever been convicted in this country for violation of other than the motor vehicle code?" To this question, Mr. Schocker answered "No." On the final page of Mr. Schocker's application, the following "Authorization and Understanding" was included:

> "Upon the signing of this application, I represent that all of the information now or hereafter given by me in support of my application for employment is true and complete. ... I agree that any false information in support of my application may subject me to discharge at any time during the period of my employment."

What Mr. Schocker failed to mention in his application was that he had, in fact, been charged and pled guilty to the felony of "Breaking & Entering of a Building with Intent to Commit Larceny"

in 1984 in Kalamazoo County, Michigan. [Criminal Judgment, Exhibit B; Schocker dep., pgs. 1029-1030, Exhibit C]. This felony, as all felonies, disqualifies plaintiff from being able to hold a position as a security guard pursuant to the Michigan Private Security Business and Security Alarm Act, MCLA 338.1051 *et seq*. Plaintiff **never** disclosed this criminal history to defendant, despite working for defendant for nearly 20 years.

During plaintiff's tenure with defendant, he was primarily responsible for the sale of security monitoring services to customers. Mr. Schocker was responsible for selling security monitoring services to commercial and some residential accounts. These services are consistent with the electronic monitoring of the premises through the use of electronic equipment owned by Guardian and leased to the customers. While there were some minor equipment sales, (window contacts, etc.), the bulk of the revenue generated from the sale was from charges for the services. In fact, the plaintiff has testified that the bulk of his commissions were based upon what is called "recurring monthly revenue" (RMR) which is the amount paid by the customers each and every month for the monitoring services. (Schocker dep., pg. 1189.)

On January 25, 2007, the plaintiff signed the salary packet for the year 2007. (Majeske dep., Exhibit D.) The same day he signed an 'employee payroll changes notice' which stated:

> "All commissions for 2006 are paid and collected in full. Start draw account 1/1/07 with a clean slate." (Exhibit E)

Again, this was signed both by Mr. Schocker and Karen Majeske. Four days later, Mr. Schocker signed a document entitled addendum which stated:

> "Notwithstanding anything to the contrary contained herein or in any other standard, compensation plan, agreement or promise, the employee agrees that except as set forth in this compensation plan/standard dated 1/1/07, no other compensation is owed to

7

employee."(Exhibit F)

Mr. Schocker amended this addendum by writing in the words "previously earned" between 'other' and 'compensation.' He signed this document on January 29, 2007. (Exhibit G)

During this period of time, Guardian was engaged in several heated lawsuits with former senior managers including the former president of the company, Jeff Prough, by attempting to enforce non-compete agreements, confidentiality agreements and compensation for alleged trademark and copyright violations. As background, former president, Jeff Prough; former general manager, Marguerite Linteau; former CIO, Tom Reddy had all left the company and established a competitive company known as Critical Signals Technologies. Guardian alleged in separate lawsuits that Prough and his compatriots were engaging in inappropriate and illegal competition. In March of 2007 Mr. Schocker agreed to meet Ira Berkowitz,(one of Jeff Prough's best friend who ultimately ended up working for CST) upon an invitation by Mr. Prough and Mr. Berkowitz.(Exhibit C pg. 1133) Mr. Schocker agreed to meet at an Applebee's Restaurant on the west side of the metropolitan Detroit area completely across town from Mr. Schocker 's home. While Mr. Schocker was waiting for Mr. Berkowitz, the defendant's vice president, Matt Fraiberg came to the restaurant with his family. He was surprised when he saw Mr. Schocker so far from home but went over to Mr. Schocker and greeted him. Mr. Schocker was surprised to say the least to see Mr. Fraiberg. Mr. Fraiberg subsequently learned that Mr. Schocker was at the Applebee's to meet Mr. Berkowitz. Mr. Schocker admitted to Mr. Fraiberg that he was there to meet with Mr. Berkowitz but refused to disclose the substance of the meeting. Needless to say, Mr. Fraiberg was genuinely concerned when he learned his subordinate employee was meeting with a close friend and confidante of a defendant in a extremely important and potentially high value lawsuit.

Mr. Fraiberg's confidence entrusted in Mr. Schocker was deeply undermined. This combined with the ever increasing number of complaints that Mr. Fraiberg had been receiving from subordinate employees regarding Mr. Schocker's performance (rude comments and behavior, inappropriate dress, inability to provide support to subordinate sales employees and attendance) prompted Mr. Fraiberg to make the decision to terminate Mr. Schocker's employment.(Fraiberg Deposition Exhibit H pp.25, 31-35)

Clearly, as Mr. Schocker has testified, he had concerns for his ongoing employment (Exhibit C pp.1063-64). As a result of these concerns, Mr. Schocker decided to utilize the provisions of Title VII of the Civil Rights Act of 1964 intended to protect members of those protected classes subjected to inappropriate and illegal discrimination for his own ends to act as a shield for any further criticism of his performance and hopefully insulate himself from otherwise appropriate termination. In April 2007, plaintiff was terminated from his employment. He subsequently filed a second EEOC charge alleging retaliation. And as he had planned all along, he filed the instant suit alleging retaliation under Title VII, failure to pay commissions owed, breach of contract and promissory estoppel. The parties have engaged in substantive discovery and it is clear there exist no genuine issues of material fact.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the answers to interrogatories, depositions, admissions and pleadings combined with the affidavits in support show that no issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v Liberty Lobby, Inc. 477 U.S. 242, 249

(1986)(citations omitted). The Court must view all material supplied, including all pleadings, in the light most favorable to the non-moving party. Matsushita Elect. Indus. Co., LTD. v Zenith Radio Court., 475 U.S. 574, 587 (1986).

The moving party bares the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. Moore v Philip Morris Co., 8 F 3d 335, 339-40 (6th Cir. 1993); Fed. R. Civ. P. 56(c).

**LAW AND ARGUMENT**

1.   **Title VII and Elliott Larsen Retaliation Claims**

   A.   **After-acquired Evidence**

Where an employer is able to show that after-acquired evidence would have led to an employee's termination, the employee's remedies are limited to back pay from the date of his termination to the date that the after-acquired evidence was discovered. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 362 (1995). Indeed, the U.S. Supreme Court has held that:

> Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. The beginning point in the trial court's formulation of a remedy should be a calculation of back pay from the

> date of the unlawful discharge to the date the new information was discovered.
>
> Where an employer seeks to rely upon after-acquired evidence of wrongdoing it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge.

McKennon, 513 U.S. at 362-63. See also Wright v. Restaurant Concept Mgmt Inc., 210 Mich App 105; 532 N.W.2d 889 (1995) (adopting the after-acquired evidence rule for Elliott Larsen cases). "The employee's wrongdoing **must be taken into account**...lest the employer's legitimate concerns be ignored." McKennon, 513 U.S. at 361 (emphasis added). Reinstatement and front pay are not remedies available to employees later discovered to have engaged in wrongful conduct. Grow v. W.A. Thomas Co., 236 Mich App 696, 710-11; 601 N.W.2d 426 (1999); Horn v. Dept. of Corrections, 216 Mich App 58, 67; 548 N.W.2d 660 (1996).

With respect to whether plaintiff's wrongdoing was "of such severity that [he] in fact would have been terminated," the Michigan Private Security Business and Security Alarm Act, MCLA 338.1051 *et seq*., **requires** that, to provide services as a private security guard, an individual can not have been under any sentence, including parole, probation, or actual incarceration for the commission of a felony. As plaintiff testified at his deposition, he had pled guilty to breaking and entering on November 5, 1984. Therefore, it is undeniable that defendant would have, pursuant to the laws of the state of Michigan, not hired plaintiff had it known that he was a convicted felon. Further, plaintiff is essentially prevented from serving in a security guard capacity pursuant to the aforementioned statute. This is not a situation where defendant must even prove that it would have fired plaintiff upon learning of his felony history because Michigan law precludes plaintiff from holding a security position.

Because defendant, by law, could not have hired plaintiff had he properly disclosed his felony conviction, plaintiff's damages are non-existent as there is no question that by law the plaintiff was never legally able to receive wages and/or a salary from defendants. He just could not work for a security monitoring company. As such he should not be able to claim compensation for wages he was not entitled to receive regardless of any separate claim of wrongful discharge or discrimination.

### B.   Legitimate Nondiscriminatory Reason for Termination

To state a prima facie case under both Title VII and the Elliott Larsen Civil Rights Act, the plaintiff must show: (1) he engaged in protected activity; (2) defendant knew of the activity; (3) defendant took an adverse employment action against plaintiff; and (4) that a causal connection exists between the protected activity and adverse employment action. Harrison v. Metropolitan Gov't, 80 F.3d 1107, 1118 (6th Cir. 1996) (overruled on other grounds); Barrett v. Kirkland Community College, 245 Mich App 306, 315; 628 N.W.2d 63 (2001), *appeal denied*, 465 Mich 951; 639 N.W.2d 809 (2002).

Vague internal charges of harassment do not constitute protected activity. Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989). If plaintiff proves he engaged in protected activity, he must show that his participation in the protected activity was a significant factor in the adverse employment action, and not merely that there is a link between the two. Barrett v. Kirkland Community College, 245 Mich App 306, 315; 628 N.W.2d 63 (2001), *appeal denied*, 465 Mich 951; 639 N.W.2d 809 (2002). "A factor can be a 'cause' without being 'significant.' Only the latter is sufficient to show retaliatory discharge." Polk v. Yellow Freight Systems, 801 F.2d 190, 199 (6th Cir. 1986) (applying Michigan law). Plaintiff must establish not only that defendant possessed discriminatory animus but that the animus was actually related to the discharge decision,

Sniecinski v. Blue Cross and Blue Shield of Michigan, 469 Mich 124, 133; 666 N.W.2d 186 (2003). Evidence consisting of nothing more than the fact that plaintiff's separation from employment came after his alleged protected activity is insufficient as a matter of law to establish causation. Walborn v. Erie County Care Facility, 150 F.3d 584, 589 (6th Cir. 1998). A plaintiff must show more than merely a coincidence in time between the protected activity and the adverse employment action. West v. General Motors Corp., 469 Mich 177, 186; 665 N.W.2d 468 (2003).

Even if an employee is able to establish a prima facie case, the defendant can avoid liability by providing a legitimate nondiscriminatory reason for its decision. McDonnell Douglas Corp. v. Green, 411 US 792 (1973). In this case, as indicated above, defendant was legally bound to sever its employment relationship with plaintiff pursuant to the Michigan Private Security Business and Security Alarm Act. Therefore, defendant has articulated a legitimate nondiscriminatory reason for its decision to terminate plaintiff. This reason can not be refuted or argued as pretextual. Plaintiff clearly was convicted of a felony and is clearly precluded from working in the security guard/alarm arena because of said conviction.

**2.      Michigan Sales Representatives Commission Act**

Plaintiff has also brought a claim alleging violations of the Michigan Sales Representatives Commission Act, MCLA 600.2961, et seq. The act defines a "sales representative" as a commissioned salesperson retained by a "principal for the solicitation of orders or sale of *goods*." MCLA 600.2961(1)(e). As indicated above, plaintiff was responsible for the marketing and sales of security services to defendant's customers. No goods were ever sold.

The Michigan Court of Appeals, in Klapp v. United Insurance Group Agency, Inc., 259 Mich App 467; 674 NW2d 736 (2003), drew comparisons between the Michigan statute and the Illinois

sales representative act. Both statutes specifically limit their protection to the "sale of goods." In drawing this comparison, the Court stated "[a]n intangible item or service, such as sold by plaintiff simply does not fit within the plain meaning of the wording of the statute." Id. at 473.

The Court also drew attention to two other statutory provisions which directly relate to the present matter. According to the Michigan Sales Representative Commission Act's definition of who qualifies as a "principal" covered by the act, the statute indicates that they must be a person that either 1) manufactures, produces, imports, sells, or distributes a *product* in this state or 2) contracts with a sales representative to solicit orders for or sell a *product* in this state. Id. at 470. The Court also cited the Uniform Commercial Code's definition of "goods" which means all things "which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid..." Id. at 471. These distinctions clearly recognize that the sales representative act was meant to protect salespeople of goods, rather than salespeople of services such as plaintiff.

Because plaintiff was responsible for the marketing and selling of security services rather than goods, he is not covered by the Michigan Sales Representative Commission Act and his claim under said statute should necessarily fail.

**3.    Breach of Contract/Promissory Estoppel**

    **A.    Breach of Contract**

Plaintiff further brings claims seeking damages under theories of both breach of contract and promissory estoppel. The essential elements of a valid contract are: (1) parties competent to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. Hess v. Cannon Twp., 265 Mich App 582, 592; 696 NW2d 742 (2005). In a situation where parties enter into an agreement that is precluded by statute, such agreement is void

and unenforceable as a matter of law. <u>Mino v. Clio School District</u>, 255 Mich App 60, 71; 661 NW2d 586 (2003).

In <u>Mino</u>, the parties entered into a confidentiality agreement that precluded the employer from disseminating negative information about a former employee. This agreement was in contravention of a state statute that precludes school districts from entering into severance agreements that have the effect of suppressing information about unprofessional conduct of an employee. The school district later violated the agreement and the employee sued. The Michigan Court of Appeals, in determining that the contract was void, held that a contract in violation of statute is an illegal contract and is therefore void. This is precisely the situation before this Honorable Court. The plaintiff, in violation of the Michigan Private Security Business and Security Alarm Act, MCLA 338.1051 *et seq*. (as more fully discussed above), contracted with defendant to perform services for which he was not legally permitted to perform. Therefore, plaintiff can not now recover on a contract which, according to the <u>Mino</u> decision, is void and unenforceable.

**B.    Promissory Estoppel**

The elements of a claim of promissory estoppel are: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. <u>Booker v. City of Detroit</u>, 251 Mich App 167, 174; 650 NW2d 680 (2002) rev'd in part on other grounds, 469 Mich 892 (2003); <u>Marrera v. McDonnell Douglas Capital Corp.</u>, 200 Mich App 438, 442; 505 NW2d 275 (1993). The promise must be definite and clear and the reliance on it must be reasonable. <u>Ypsilanti Twp v. Gen. Motors Corp.</u>, 201 Mich App 128, 134, 139; 506 NW2d 556 (1993). Courts should

15

cautiously evaluate an estoppel claim and apply the doctrine only if "the facts are unquestionable and the wrong to be prevented undoubted." Novak v. Nationwide Mutual Ins. Co., 235 Mich App 675, 687; 599 NW2d 546 (1999). "Generally speaking, estoppel cannot be used to enforce an illegal contract or allow its rescission if the contract offends a public policy embodied in a statute." William's Delight Corp v. Harris, 87 Mich App 202, 208; 273 NW2d 911 (1978), citing Leland v. Ford, 245 Mich. 599, 609-610; 223 NW 218 (1929).

First and foremost, plaintiff is unable to establish that the "wrong to be prevented" is undoubted. In fact, to allow plaintiff to recover under a promissory estoppel theory when he knowingly entered into a contract that he was not legally capable of performing would be the greatest injustice. Secondly, plaintiff's promissory estoppel theory is essentially an attempt to avoid the illegality of the parties' alleged agreement.

## CONCLUSION

For the reasons stated above, defendant, Guardian Alarm Company of Michigan, respectfully requests this Honorable Court enter Summary Disposition in their favor and against plaintiff.

By: s/ Thomas R. Paxton
GARAN LUCOW MILLER, P.C.
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-5518
Tpaxton@garanlucow.com
P36214

Dated: May 16, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD H. SCHOCKER,

    Plaintiff,

vs.                                              Case No: 07-15059
                                                    Honorable Victoria A. Roberts

GUARDIAN ALARM CO. OF MICH.

    Defendant.

_____

| DAVID A. KOTZIAN, PLLC | GARAN, LUCOW, MILLER, P.C. |
|---|---|
| DAVID A. KOTZIAN P38308 | THOMAS R. PAXTON P36214 |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 31700 Middlebelt Road, Suite 150 | 1000 Woodbridge |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| 248-737-9991 | 313-446-5518 |

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2008, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following: David A. Kotzian and I certify that I have mailed by U.S. Mail the document to the following non-ECF participants:

                                                    By: s/ Thomas R. Paxton
                                                    GARAN LUCOW MILLER, P.C.
                                                    1000 Woodbridge Street
                                                    Detroit, MI 48207-3192
                                                    (313) 446-5518
                                                    Tpaxton@garanlucow.com
                                                    P36214