UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD H. SCHOCKER,

        Plaintiff(s),        CASE NUMBER: 07-15059
                                          HONORABLE VICTORIA A. ROBERTS

v.

GUARDIAN ALARM CO. OF MICHIGAN,

        Defendant(s).
                                                /

## ORDER DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S FUTURE WAGE LOSS AND COMPENSATION PLAN

**I.    INTRODUCTION**

This matter is before the Court on Defendant Guardian Alarm Co. of Michigan's Motion *in Limine* to Exclude Evidence of Plaintiff's Future Wage Loss and Compensation Plan. Oral argument was held September 29, 2008. Defendant's motion is **DENIED**.

**II.    BACKGROUND**

In April 1987, Plaintiff Ronald H. Schocker applied to work for Defendant, but neglected to mention that he had a prior felony conviction. Michigan law prohibits employers in Defendant's line of business from hiring convicted felons. MICH. COMP. LAWS ("M.C.L.") §§ 338.1051 *et seq.* Plaintiff alleges that, in August 1987, the Michigan State Police forwarded Defendant a copy of Plaintiff's criminal record and requested that he be terminated forthwith. Instead, after discussing the matter with Plaintiff, Defendant opted to keep him on staff for the next twenty years.

1

Plaintiff alleges that, between 2005 and 2006, he received complaints that Defendant's Vice-President, Matt Fraiberg, had engaged in sexually harassing behavior towards certain female employees. Plaintiff claims he took steps to oppose this conduct and confronted Mr. Fraiberg on this matter in October 2006, when one of the allegedly harassed employees resigned. In return, Defendant allegedly retaliated against Plaintiff by, among other things, offering him a modified compensation plan that significantly reduced his income in December 2006. Plaintiff refused to sign this plan, but in January 2007 he signed another, even less favorable plan, allegedly to preserve his employment.

Plaintiff was discharged on April 19, 2007, and on November 28, he filed suit alleging (1) Retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; (2) Retaliation under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §§ 37.2101 *et seq.*; (3) Breach of Contract; (4) violation of the Michigan Sales Representative Commissions Act ("MSRCA"), M.C.L. §§ 600.2961 *et seq.*; and (5) Promissory Estoppel. This Court granted summary judgment for Defendant on Plaintiff's MSCRA, breach of contract and promissory estoppel claims. *Schocker v. Guardian Alarm Co. of Mich.*, No. 07-15059, 2008 U.S. Dist. LEXIS 59160 (E.D. Mich. Aug. 5, 2008). In particular, the Court found the underlying employment contract to be illegal under M.C.L. §§ 338.1051 *et seq.* and thus unenforceable. *Id.* at *46. However, the Court allowed Plaintiff's Title VII and ELCRA claims to move forward.

Defendant now moves to exclude evidence of Plaintiff's future wage loss and compensation plan as they relate to his remaining claims.

2

### III. ANALYSIS

#### 1. Evidence of Plaintiff's Future Wage Loss

Defendant argues that, since this Court held the underlying employment contract to be illegal, evidence of Plaintiff's future wage loss should not be admitted. Defendant reasons that "[a]ny claim for future wage loss based upon an illegal contract fails," and concludes that evidence of future wage loss is therefore irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. (Def.'s Mem. Supp. Mot. 6.) For his part, Plaintiff argues that evidence of both past *and* future wage loss is relevant to his damage claims under Title VII and ELCRA.

This Court has already held that the illegal nature of the underlying employment contract does not deprive Plaintiff of Title VII protections. However, Defendant argues that even if Title VII protects Plaintiff against discrimination, the illegal nature of the underlying contract precludes him from seeking wage loss damages for the period from his discharge until the resolution of this case.

In this sense, Defendant poses a question distinct from the one addressed by the Supreme Court in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995). In *McKennon*, the issue was whether an employee could seek relief under the Age Discrimination in Employment Act ("ADEA") if, after discharge, it was revealed that s/he had committed a wrongdoing which, had the employer been aware of it at the time, would have resulted in lawful termination. *Id.* at 354.[1] *McKennon* did not specifically

---

[1] Like many other federal courts of appeals, the Sixth Circuit has held *McKennon* applicable to Title VII claims. *See Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1153 (6th Cir. 1995) ("While *McKennon* involved an ADEA claim, we are persuaded by its language that it applies equally to a Title VII claim").

consider the case of a contract which, like this one, was statutorily illegal at the time of its signing. Defendant argues that while an employee who commits a wrongdoing *in the course of her employment* may still receive some future wage loss damages, Michigan's statutory policy against hiring former felons precludes such relief.

The fact that the parties' employment contract is illegal does not fundamentally alter the Court's analysis. In fact, *McKennon* compels the conclusion that damages should be available even when a contract is unenforceable. In *McKennon*, the Supreme Court emphasized the remedial nature of Title VII, which Congress designed for the specific purpose of eliminating discrimination in the workplace. *Id.* at 358. The Court noted the statute's twin and complementary objectives: deterring future unlawful conduct, and compensating victims for injuries suffered due to discriminatory acts. *Id.* The Court also stressed the important role of private litigants in securing these goals, *id.* at 358-59, since their actions serve not only to obtain redress for themselves, but also to "vindicate[] the important congressional policy against discriminatory employment practices." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45 (1974). Said the Court,

> It would not accord with [the statutory] scheme if afteracquired evidence of wrongdoing that would have resulted in termination operates, *in every instance, to bar all relief* for an earlier violation of the Act.

*McKennon,* 513 U.S. at 358 (emphasis added). Accordingly, the Court held that although evidence of a prior wrongdoing sufficient to warrant termination could reduce a plaintiff's damages, it should not absolve the defendant of all liability. *Id.* at 361-62.

*McKennon* reflects the belief that Congress's purpose in passing Title VII was so fundamentally important that even employee wrongdoing is not an absolute defense for an employer who engages in illegal discrimination.

The same reasoning applies to unenforceable employment contracts. Were an illegal contract to operate as an automatic bar against Title VII relief, the statute's deterrent and remedial purposes would both be frustrated: not only would the victim be denied compensation, the responsible party would entirely escape liability. This Court has not found, and the parties do not cite, any case law that would support this outcome.

A study of Title VII jurisprudence as applied to illegal immigrants further supports this point. For purposes of the legality of an employment contract, there is no difference between a law that prohibits employers from hiring former felons and the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1324a, which forbids hiring undocumented non-citizens. Courts consistently refuse to find that Title VII does not protect foreign individuals working illegally in the United States. This remains true even in the wake of *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), where the Supreme Court held that IRCA precludes backpay awards to illegal immigrants fired in violation of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq. See, e.g., Chellen v. John Pickle Co.*, 446 F. Supp. 2d 1247, 1286 (N.D. Okla. 2006) ("*Hoffman . . . does not change the analysis for purposes of a Title VII claim. . . . The legal status and citizenship of the plaintiff employees . . . does not preclude the aggrieved individuals from recovering full and fair compensation for work actually performed*"); *Avila-Blum v. Casa De Cambio Delgado, Inc.*, 236 F.R.D. 190, 192 (S.D.N.Y. 2006) (magistrate judge did not err in concluding that "*Hoffman Plastic* was limited to actions brought by the NLRB to enforce the National Labor Relations Act"). *But see Garcia v. Monument Management Group, L.L.C.*, No. 05-3139, 2006 U.S. Dist. LEXIS 48532, at

*5-6 (D. Neb. July 17, 2006) ("There have been, since *Hoffman Plastic*, very few cases addressing that issue, and the answer has not yet been authoritatively established").

The federal courts' reluctance to expand *Hoffman Plastic* to Title VII claims is significant, because it illustrates how important the Act's anti-discrimination mandate remains. If Title VII applies even to employment relationships that violate the nation's immigration laws, then this Court has no difficulty concluding that it applies in this case as well. *See Rivera v. Nibco*, 364 F.3d 1057, 1069 (9th Cir. 2004) (stating in dicta that, even after *Hoffman Plastic*, "the overriding national policy against discrimination would seem likely to outweigh any bar against the payment of back wages to unlawful immigrants in Title VII cases").

Title VII's applicability notwithstanding, Defendant does have a point in arguing that Plaintiff's future wage loss should not be an element of damages. Although *McKennon* established that employees are entitled to Title VII relief even when evidence of misconduct arises after termination, the Supreme Court also set limits on the type of damages they could claim. After noting that an adequate remedy would depend on the factual and equitable considerations of each case, the Court determined that

> as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

*McKennon*, 513 U.S. at 361-62.

Unfortunately, *McKennon* is only of limited help in this case. At oral argument on its motion for summary judgment, Defendant denied that it discovered Plaintiff's criminal

6

record shortly after hiring him.  Thus, the issue of when Defendant became aware of Plaintiff's prior conviction remains a contested material fact, to be resolved at trial.

Under *McKennon*, if Defendant proves at trial that (1) it learned of Plaintiff's criminal record only after firing him, and (2) prior notice of Plaintiff's conviction would have resulted in his immediate discharge, then Plaintiff will not be able to obtain either reinstatement or front pay.  Defendant would then be correct in arguing that evidence of future wage loss would be irrelevant to Plaintiff's damage claims.  On the other hand, *McKennon* does not apply if Plaintiff shows that Defendant was aware of his conviction a few months into his employ, and yet kept him in his position for over twenty years.  If the jury further finds that Plaintiff's discharge violated Title VII, evidence of future lost wages will be relevant to determine the amount of damages to which Plaintiff is entitled.

The answer to whether evidence of Plaintiff's future wage loss is relevant to his claims will therefore depend on the trial jury's decision.  If the jury finds that Defendant only learned of Plaintiff's conviction after terminating him, the Court must not permit the jury to consider evidence of Plaintiff's future wage loss in assessing damages.  But if the jury holds instead that Defendant was aware of Plaintiff's conviction before firing him, the Court must permit the jury to consider evidence of Plaintiff's future wage loss as a part of damages.

This ruling does not affect the admissibility of evidence concerning Plaintiff's past wage loss, which remains relevant and admissible under either scenario.  *See McKennon*, 513 U.S. at 362 (holding that absolutely barring any recovery of backpay would undermine the statute's objective of eliminating discrimination in the workplace, and thus "[t]he beginning point in the trial court's formulation of a remedy should be

calculation of backpay from the date of the unlawful discharge to the date the new information was discovered").

### 2. Evidence Relating to Plaintiff's Compensation Plan

Defendant asserts that Plaintiff's compensation plan is inadmissible both as evidence of the amount of his compensation and as evidence to support his discrimination claims. Neither argument is correct.

Defendant first claims that since this Court held Plaintiff's employment contract to be unenforceable, "evidence relating to Plaintiff's compensation plan is inadmissible as it relates to future wage loss." (Def.'s Mem. Supp. Mot. 7.) As discussed above, the illegal nature of the underlying contract does not vitiate Plaintiff's damage claims under Title VII or ELCRA. To the extent that it constitutes part of Plaintiff's overall payment for his services, the compensation plan should be treated the same way as future wage loss, and the evidence will be admitted at trial. However, whether the Court allows the jury to consider the compensation plan in assessing damages will depend on the jury's finding as to when Defendant actually discovered Plaintiff's criminal record.

Defendant also argues that the compensation plan should not be admissible as evidence to support Plaintiff's retaliation claims under Title VII and ELCRA. Specifically, Defendant contends that evidence relating to the compensation plan is "inadmissible to show retaliation in support of Plaintiff's Title VII opposition claim . . . because Plaintiff has failed to establish the first element of a *prima facie* case under Title VII." (*Id.*) Whether or not Plaintiff has established a *prima facie* case of retaliation is a matter for summary judgment, and this Court has already found Plaintiff's allegations sufficient to pass muster. *Schocker*, 2008 U.S. Dist. LEXIS 59160 at *24-35. Therefore, evidence

of Plaintiff's compensation plan is excludable only if it is not relevant to his Title VII and ELCRA claims.

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 402. Rule 401 defines "relevant evidence" as

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In a case without direct evidence of retaliation, such as this one, a plaintiff must proceed according to the burden shifting analysis laid out by the Supreme Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Michigan applies the same rule for ELCRA claims, and also follows the same burden shifting analysis. *See Bilak-Thompson v. Dollar Tree Stores, Inc.*, No. 06-2619, 2008 U.S. App. LEXIS 13655, at *10-11 (6th Cir. June 24, 2008) (*citing Sniecinski v. Blue Cross & Blue Shield of Michigan*, 469 Mich. 124, 134 (2003) ("In cases involving indirect or circumstantial evidence [of discrimination], a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas*. . .")).

To succeed on a Title VII claim for retaliation, a plaintiff must show that:

(1) S/he engaged in activity protected by Title VII;
(2) This exercise of protected rights was known to the defendant;
(3) The defendant thereafter took a materially adverse action against the plaintiff or subjected him or her to severe and pervasive retaliatory harassment; and
(4) There was a causal connection between the protected activity and the materially adverse action.

*See Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 595-596 (6th Cir.

9

2007); *Abbott*, 348 F.3d at 542.  Once the plaintiff establishes his or her *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the materially adverse action.  *McDonnell Douglas*, 411 U.S. at 802; *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000).  If the defendant meets its burden of production, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  To succeed, the plaintiff must demonstrate, by a preponderance of evidence, that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct.  *Dews*, 231 F.3d at 1021 (*citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Plaintiff alleges that Defendant's decision to modify his compensation plan was retaliatory in nature, because it materially affected his conditions of employment and occurred within a few months of his opposition to Mr. Fraiberg's harassing conduct.  Thus presented, the change in Plaintiff's compensation plan is material to the issue of whether or not Plaintiff was retaliated against, and has a tendency to make the existence of a retaliatory animus on Defendant's part more or less probable.  Therefore, evidence relating to the plan is both relevant under FED. R. EVID. 401 and properly admissible under FED. R. EVID. 402.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion *in Limine [Dkt.29]* is **DENIED**.

**IT IS ORDERED**.

                                        **S/Victoria A. Roberts**
                                        **Victoria A. Roberts**
                                        **United States District Judge**

**Dated: October 2, 2008**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 2, 2008.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**